UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                                         Case No. 09-20136

        Plaintiff,

                                         Honorable Nancy G. Edmunds

v.


JAMES MICHAEL GLEATON,


        Defendant.

_____/


**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS[12]**


At a hearing held on June 15, 2009, this matter came before the Court on Defendant's motion to suppress statements he made to the police. The statements were made while Defendant, James Michael Gleaton, was at the police station being questioned by Detective Christopher Boulter of the Blackman Township, Michigan Police Department. Defendant was not informed of his right to remain silent prior to his statements, and therefore argues that they must be suppressed. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (ruling that all persons subject to custodial interrogation must be informed of their right to remain silent). The government responds that Defendant was not in police custody when he made the statements; and

1

thus, *Miranda* warnings were not required.  For the reasons set forth below, Defendant's motion to suppress is DENIED.

## I. Facts

Defendant James Michael Gleaton lent his personal computer to Michael Cadwallader. (Gov't Resp. at 2).  Cadwallader found pornographic images of children on Defendant's computer and, on October 10, 2008, reported this discovery to the police.  (*Id.*).  On October 15, 2008, Defendant reportedly attempted to enter Cadwallader's house to retrieve Defendant's belongings.  (*Id.*).  Cadwallader informed Defendant that he had discovered pornographic images of children on Defendant's laptop and had reported this finding to the police.  (*Id.*).  Cadwallader told Defendant that he did not want to see him again, and Cadwallader's wife called the police.  (*Id.*). The officers who arrived on the scene instructed Defendant to return later that day to the Cadwallader home to collect his belongings.  (*Id.*).  At approximately 1:00 p.m. on October 15, 2008, Detective Boulter arrived at the Cadwalladers' home in response to a dispatch requesting an officer's presence while Defendant removed his belongings. (*Id.*).  At that time, Boulter advised Defendant that he needed to talk to him about the images found on his computer.  (*Id.*).  Defendant, not in handcuffs, rode to the police headquarters in the front seat of Boulter's unmarked vehicle.  (*Id.*).  At the police station, Boulter interviewed Defendant, who, without having been read his *Miranda* rights, admitted to downloading and possessing child pornography.  (*Id.* at 3).

## II. Analysis

The issue in this case is whether Defendant's interview was a custodial interrogation which would require *Miranda* warnings, or noncustodial which would not require them. Defendant bears the burden of demonstrating by a preponderance of the evidence that the interview was a custodial interrogation. *See United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986) ("The burden of production and persuasion rests on the person seeking to suppress evidence.").

### A. *Miranda* Warnings

The Fifth Amendment of the United States Constitution provides in part, "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.  In order to provide a safeguard to secure the privilege against self-incrimination, the Supreme Court has decided that all defendants subject to custodial interrogation must be informed of their right to remain silent. *See Miranda v. Arizona*, 384 U.S. at 444*.* Any statement made by Defendant stemming from a custodial interrogation without the use of such a safeguard may not be used by the prosecution. *Id.*

Defendant argues that Boulter considered him to be the only suspect, and therefore he should have been read his *Miranda* rights.  This argument is without merit. The custodial determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003)

(citing *Stansbury v. California*, 511 U.S. 318, 323 (1994) (per curiam)).   Boulter's unexpressed subjective belief is irrelevant.   That Defendant was the only suspect is likewise irrelevant.   Rather, it is the "compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicion at the time the questioning was conducted" that is important.   *Beckwith v. United States,* 425 U.S. 341, 346–47 (1976) (quoting *United States v. Caiello*, 420 F.2d 471, 473 (2d Cir. 1969)).   In *Beckwith*, the Supreme Court expressly rejected the use of the "focus test" in determining whether *Miranda* warnings were required.   *See Beckwith*, 425 U.S. at 347.

### B. Determining Custody

The Supreme Court has defined the custodial interrogation that triggers the need to give *Miranda* warnings as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."   *Miranda*, 384 U.S. at 444.   If a person is not in custody, any statement made may be used by the prosecution.   *See id.; see also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).   Accordingly, the court must determine whether Defendant was in custody at the time he made the challenged statements.

Although facts specific to a given case influence the custody determination, the Supreme Court has observed that "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."   *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004) (quoting *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curiam)).   To determine whether Defendant was in custody when he was being interviewed, it is necessary to look at the totality of

4

the circumstances surrounding the interrogation.  *United States v. Harris*, 611 F.2d 170, 172 (6th Cir. 1979).  Factors that guide that inquiry include "the location of the interview, the length and manner of questioning, whether the individual possessed unrestrained freedom of movement during the interview, and whether the individual was told she need not answer the questions."  *United States v. Panak* 552 F.3d 462, 465 (6th Cir. 2009).

### C. Application of "Totality of Circumstances" Test

#### 1.  Location of Interview

Defendant's interrogation took place at the police station, but this alone is insufficient to require *Miranda* warnings.  *See Oregon v. Mathiason*, 429 U.S. at 495 (declaring that the requirement of *Miranda* warnings is not imposed "simply because the questioning takes place in the station house."); *see also Mason v. Mitchell,* 320 F.3d at 632 observing that questioning at "a police station does not necessarily constitute custodial interrogation.").  That Defendant was questioned at the police station, although an important factor, is not dispositive to the custodial determination.

#### 2. Length of Questioning

The interview lasted no longer than thirty minutes.  One factor the Court found in *Mathiason* to support the conclusion that the defendant in that case was not in custody was the fact that the interview only lasted a thirty minutes.  429 U.S. at 495.  Because the interview here did not last longer than the interview in *Mathiason*, this supports a

finding that Defendant was not in custody when he admitted to possessing child pornography.

### 3. Manner of Questioning

The government asserts that the manner of the questioning was not threatening, aggressive, or otherwise coercive, and Defendant does not posit a contrary view. During the interview, Defendant asked for and received a beverage, was able to send and receive text messages, and was left unattended on multiple occasions. (Pl.'s Ex. B, videotaped interview of Def.)  Neither the nature nor the tone of the interview was aggressive.

### 4. Unrestrained Freedom of Movement During Interview

Defendant was not physically restrained in any way prior to making incriminating statements to the police. (*Id.*).  Defendant had complete freedom of movement during the interview, was never handcuffed or otherwise physically restrained, was not told he was under arrest, threatened with arrest, or told to remain where he was. (*Id.).*  In *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998), the Sixth Circuit Court of Appeals used these factors to conclude that a defendant was not in custody.

Additionally, Defendant was free to end the questioning and leave.  The door to the interview room was open during the entire interview, and Defendant was left unsupervised multiple times. (Pl.'s Ex. B).  Defendant was able to use his phone to send and receive text messages. (*See id.*).  At one point while Defendant was left unsupervised, he walked to the door of the interrogation room to talk to Detective

6

Boulter, who was somewhere in the hallway.  (*See id.*).  Defendant was not physically restrained in any way.

### 5. Defendant Not Under Arrest When Questioned

At no time did Detective Boulter state or imply that Defendant was under arrest or for any other reason not free to leave.  At one point during the interview, Defendant asked, "Am I in trouble for [possessing child pornography]?"  (*See* Pl.'s Ex. B).  Detective Boulter responded, "At this point in time, no." (*See id.*).  This is constructively the same as Boulter telling Defendant that he was not under arrest.  In determining whether a defendant is in custody, advising the defendant that he is not under arrest is arguably the most significant factor.  *See Salvo*, 133 F.3d at 951.  This, along with the freedom of movement afforded to Defendant, is "compelling evidence" that Defendant was not in custody when he made his incriminating statements.  *See id.*

### 6. Other Relevant Factors

Police responded to a call around 4:30 a.m. when Defendant was allegedly trying to enter into Cadwallader's home.  At this time, it had already been reported to the police that child pornography had been discovered on Defendant's computer. Nonetheless, the police let Defendant leave and instructed him to return later to collect his belongings from Cadwallader's house.  The interview at issue here took place after Defendant returned to Cadwallader's house for his belongings.

Plaintiff argues that there were locations other than the police station that the questioning could have taken place.  However, the existence of alternative locations is

7

not determinative of the "in custody" question.  The government responds that the questioning most likely would have taken place at Cadwallader's house if Cadwallader had not insisted on Defendant being removed from his property.  Furthermore, Defendant conceded at the hearing that he voluntarily agreed to ride with Detective Boulter to the police station.  Defendant also conceded that he was not handcuffed and rode in the front seat of Detective Boulter's unmarked police car with the doors unlocked.  The relevant inquiry is not how Defendant got to the police station, but rather whether he went there voluntarily.  *See Mason v. Mitchell*, 320 F.3d at 632 (observing that the mode in which the defendant is transported for questioning is irrelevant).  In *Mason*, the court concluded that the defendant was not in custody despite the fact that he was driven to the police station in a police car.  *Cf. United States v. Orozco-Torres*, Nos. 06-6070, 07-5335, 2008 WL 4963194, at *4 (6th Cir. Nov. 20, 2008) (finding that the defendant's "inculpatory statements were freely and voluntarily given" based upon his admissions that "he agreed to go . . . to the bureau station," that he was not told he was under arrest, "that he was never handcuffed, and that he rode in the front seat of the agent's car to and from the station.").

The only "key players" for the purpose of the custodial determination in the present case are Detective Boulter and Defendant.  Detective Boulter was calm and friendly the entire interview.  Defendant does not contend that Detective Boulter was aggressive, hostile, or confrontational at any time.  Defendant's demeanor was also calm, and gave no indication that he thought he could not leave.  (Pl.'s Ex. B).

8

**III. Conclusion**

Because Defendant has not shown that he was in custody when he made incriminating statements, his motion to suppress is DENIED.


s/Nancy G. Edmunds                                   
Nancy G. Edmunds
United States District Judge

Dated:  June 16, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 16, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                                   
Case Manager